374 So.2d 618 (1979)
CHALFONTE DEVELOPMENT CORPORATION, Appellant,
v.
ROSEWIN COATS, INC., Etc., Appellees.
No. 78-916.
District Court of Appeal of Florida, Fourth District.
August 15, 1979.
Davis W. Duke, Jr. of McCune, Hiaasen, Crum, Ferris & Gardner, P.A., Fort Lauderdale, for appellant.
Lois J. Frankel of Montgomery, Lytal, Reiter, Denney & Searcy, P.A., West Palm Beach, for appellees.
*619 DAUKSCH, Associate Judge.
This is an appeal from a judgment for damages in a suit for rescission of a contract to purchase a condominium unit.
Briefly the facts are that appellee through its out-of-state president, Merrill Rose, agreed to purchase a condominium unit from appellant. As an initial deposit the appellee put up approximately $6,000 when the purchase agreement was signed. Various correspondence and dealings between the parties occurred during the months before the time came for closing of the contract, the delivery of the deed and the payment of the balance of the purchase price. When the time for the closing did arrive the appellee refused to pay the balance due and said the deal was off because the seller failed to comply with Section 711.24, Florida Statutes (1973)[1] which requires delivery of the various therein mentioned condominium documents. That statute gives the buyer the absolute right to rescind the contract if the seller fails to comply with it. The seller says not only did he always deliver the documents in proper time, he did so in this instance and the buyer acknowledged receiving the documents when he signed the contract. The buyer said he did not receive the requisite documents.
This case falls quite well within the holding of Allied Van Lines, Inc. v. Bratton, 351 So.2d 344 (Fla. 1977). That case involved a shipper of household goods who failed to read a limitation of liability provision in a shipping contract and therefore sought to escape its economically disadvantageous result when her goods were destroyed during shipment. Our Supreme Court held the shipper was bound by her contract and the fact she said she did not read it does not release her from the contract's provisions. This case is similar because Mr. Rose signed the contract, acknowledged receipt of all the documents and then later, much later and only when faced with a closing, said he did not receive the documents. Not only, we add, did Mr. Rose sign the contract containing the acknowledgement of receipt, he testified he had read the contract. It *620 was also in evidence he was continually in contact with the seller in regard to a sale of his condominium unit-to-be and various other matters. He made contact by correspondence from himself and his son, who was a lawyer, about the unit for a number of months with no complaints until the time for closing. As can be seen the facts are not so much in favor of Mr. Rose but the ultimate reason for our decision is the application of the rule set out in Allied Van Lines, Inc. v. Bratton, supra, which binds one who signs a contract to its terms. Therefore we reverse the judgment for appellee and remand for entry of judgment for appellant.
REVERSED and REMANDED.
BERANEK, J., concurs.
ANSTEAD, J., concurs specially without opinion.
NOTES
[1] 711.24 Full disclosure prior to sale; publication of false or misleading information. 

(1) Prior to the initial sale or offering for sale of any condominium parcel, the seller or developer or his or its agent must make full disclosure of, and provide copies to the prospective buyer of, the following information relative to the condominium project:
(a) Copy of the declaration of condominium.
(b) Copy of the articles of incorporation or charter of the association.
(c) Copy of the bylaws of the association.
(d) Copy of the underlying ground lease or other document creating a right of use, if any, including terms and conditions and charges for same.
(e) Copy of the management or maintenance contract, if any, which shall specify the services to be rendered under the maintenance contract and the charges to be made thereunder.
(f) Copy of a projected operating budget for the condominium unit to be sold to the prospective buyer, including full details concerning the estimated monthly payments for the condominium unit, estimated monthly charges for maintenance or management of the condominium property, and monthly charges for the use, rental, or lease of recreational facilities.
(g) Copy of the sales brochure and a floor plan of the apartment to be purchased by the prospective buyer. There shall also be included in the sales brochure information showing the description and location of recreational facilities, parking facilities, and other common areas together with a statement indicating which of the facilities will be owned by the unit owners and which of the facilities will be owned by others.
(2) All of the information required by subsection (1) which is available at the time shall be furnished to the prospective buyer prior to execution of the contract for sale. Thereafter, no changes or amendments may be made in any of the items furnished to the prospective buyer which would materially affect the rights of the buyer or the value of the unit without obtaining the approval of the buyer. If all of the information is not available at the time of the execution of the contract for sale, then the contract shall provide that it shall be voidable at option of the buyer at any time up until fifteen days after the last item of required information is furnished to the prospective buyer, which latter act shall occur no later than ninety days prior to the closing of the sale. Failure on the part of the seller or his agent to make full disclosure as required herein shall entitle the buyer to rescind the contract for sale at any time prior to closing of the contract and to receive a refund of all deposit moneys paid with interest thereon at the highest rate then being paid on savings accounts, not inclusive of certificates of deposit, by savings and loan associations in the area in which the condominium property is located.